[No. 6013.]

## KIRBY ET AL. v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

1. JUDGE'S CHAMBER—*Must Be Located Within the District*—Under Sec. 471 Rev. Code (Sec. 436 Mills Code), a judge may make orders, and exercise judicial authority, only when sitting in court, or at his chambers; and under Rev. Code Secs. 443, 444, (Mills Code Secs. 408, 409) the chambers of a district judge must be located within his district. An attempted exercise by a district judge, of judicial authority, in a matter pending in, or pertaining to, the courts of his district, at a time when he is outside of his district, is without warrant of law and void—(85-88).

To present to a judge an affidavit of the facts constituting a contempt, as required by the code (Rev. Code Sec. 356, Mills Code Sec. 322) is to lay it before him for judicial consideration and action. This is the first step in the proceeding against the contemnor, and the presentation must be made at a place where judicial consideration and action may lawfully ensue. Until this is done the proceeding cannot be said to have commenced, or the charges to have been made; therefore a warrant for an attachment for an alleged contempt, issued by a district judge while he is absent from his district, though within the state, upon affidavits presented to him while so without his district, is a nullity, and should be quashed upon motion—(90).

2. STATUTES—*Construed*—A statute (Rev. Code Sec. 471, Mills Code Sec. 436) provides that "the judges of courts of record shall at all reasonable times, when not engaged in holding courts, transact such business at their chambers as may be done out of court. * * * They may hear and dispose of all applications for orders and writs which are usually granted on *ex parte* application, and may, in their discretion, also hear

applications to discharge such orders and writs." *Held*, a positive direction that all judicial action had out of court shall be had at the chambers of the judge. *Held further*, that the chambers of a judge of the district court must be located within his district—(85-88).

The provision of the code that to initiate proceedings to punish a contempt not committed in the presence of the court an affidavit of the courts constituting the alleged contempt "shall be presented to the court or judge (Rev. Code Sec. 356, Mills Code Sec. 322) imports that the affidavit is to be laid before the judge for judicial consideration and action; and under the provisions of Rev. Code Secs. 471, (Mills Code Sec. 436) such presentation must be to the court, sitting as a court, or to the judge, at his chambers, where alone, judicial consideration and action can be had—(84, 85).

·3.  MOTION — *Construction* — *Waiver* — A motion to quash an attachment issued by a district judge, not sitting in court nor within his district, for an alleged violation of an injunction, set forth as grounds thereof (1) That the Court had no jurisdiction to allow the injunction. (2) That plaintiff in the injunction suit had no capacity to maintain an action in Colorado. (3) That no affidavit had been presented to the judge, within the limits of the judicial district setting forth any facts as to the alleged contempt.

The assignment of the first two grounds of the motion was held no waiver of the last—(90).

*Error to Pueblo District Court*—Hon. N. WALTER DIXON, Judge.

Mr. S. HARRISON WHITE, for plaintiff in error.

Mr. CHARLES W. WATERMAN, for defendant in error.

Mr. JUSTICE MUSSER delivered the opinion of the court:

The plaintiff in error was adjudged guilty of contempt for violating an injunction theretofore issued out of the district court of Pueblo county, in the tenth judicial district. The affidavits, upon which it is claimed the contempt proceeding was based, were pre-

sented to the judge of the tenth judicial district at Denver, in the second judicial district. The judge acted upon these affidavits and issued a warrant of attachment at Denver, returnable at Pueblo, and the affidavits were then transmitted to the district court clerk of Pueblo county and filed. No affidavit was ever presented to the district court of Pueblo county, or the judge thereof, within the territorial limits of the tenth judicial district, prior to the making of a motion to quash the warrant of attachment, by the plaintiff in error. This motion to quash was based upon three grounds; first, that the court had no jurisdiction to issue the original injunction alleged to have been violated by the defendant; second, that the plaintiff in the original action in which the injunction was issued had no capacity or authority to maintain an action in the state of Colorado; third, because no affidavit had been presented to the district court of Pueblo county, or to either of the judges thereof, within the limits of the tenth judicial district, setting forth any facts as to the alleged violation of the injunction. This motion was overruled by the court, to which ruling exceptions were duly saved. An answer was then filed by the plaintiff in error and the matter heard by the court.

Section 356 Rev. Code, sec. 322 Mills' Ann. Code, provides for the initiation of a proceeding in contempt as follows:

"When the contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators."

In *Thomas v. People,* 14 Colo. 254, this court held that it was necessary to present an affidavit substantially as provided in this section before the court has jurisdiction to act. Obviously, to present an affidavit,

as contemplated by this section, is to lay it before
the court or judge for judicial consideration and ac-
tion.  This is the first step provided for the commence-
ment of the proceeding, and, of course, until it is done
the proceedings can not be said to have commenced
or the charge made.  No affidavit was ever presented
to the court for action thereon in this matter, although
two were filed, until and except as presented in con-
nection with the motion to quash.  If it also appears
that, at that time, no affidavit had been presented to
the judge, as the code provides, then the court was
without jurisdiction to proceed, and of necessity the
motion to quash ought to have been sustained.  As no
affidavit had been presented to the court, it only re-
mains to be determined whether any affidavit had been
presented to the judge, within the contemplation of
the section of the code quoted above.  A reading of
that section conveys to the mind the meaning that
the affidavit shall be presented to the court or judge
at chambers.  If this meaning is not obvious from
a reading of the section, it becomes clear when it is
ascertained when and where a judge may act out of
court.  A judge can attempt to do judicial business
only in court or out of court.  He can only do such
judicial business out of court as the statute expressly
directs.—*Gruner v. Moore*, 6 Colo. 526.

Section 471, Rev. Code, sec. 436 Mills' Ann. Code,
provides that, "The judges of courts of record shall,
at all reasonable times, when not engaged in holding
courts, transact such business at their chambers as
may be done out of court.  At chambers they may hear
and dispose of all applications for orders and writs
which are usually granted in the first instance upon
*ex parte* application, and may, in their discretion, also
hear applications to discharge such orders and writs."
This is a positive direction that all business, which
may be done out of court, shall be done at the chambers

of the judge.  A judge, therefore, is a judge in the sense that he may do judicial business only in court or at his chambers.  What are the chambers of a judge of the tenth judicial district?  Rapalje, in his Law Dictionary, defines the word "chambers" as follows:

"Attached to the various courts of record are rooms called chambers, in which the judges sit to transact business which does not require to be done in court, or can be more conveniently disposed of in chambers."

Vol. 3, Am. & Eng. Ency. of Law, p. 68, says:

"Office or private room of a judge where parties are heard and orders made and other business transacted in matters which do not require to be done in open court."

Bouvier says:

"Chambers.  In Practice.  The private room of the judge.  Any hearing before a judge which does not take place during a term of court or while the judge is sitting in court, or an order issued under such circumstances, is said to be *in chambers*.  The act may be an official one, and hearing may be in the court room; but if the court is not in session, it is still said to be done *in chambers*."

In 4 Ency. of Pl. & Pr. 337, it is said:

"The term 'chambers,' in its usual significance, means the private rooms or office of a judge, or other place where motions are heard, orders made, or other business is transacted by a judge out of court in term time or during vacation, in matters which do not require a hearing by a judge or judges sitting as a court."

In *Commonwealth v. McLaughlin*, 122 Mass. 449, an indictment for perjury averred that a motion for a new trial was heard by a justice of the superior court "at his chambers," and this was held satisfied

by proof that the hearing took place in an apartment appropriated to the use of that court for the transaction of business not requiring the presence of a jury, the court said:

"By the 48th rule of the superior court, motions for a new trial may be heard by a judge 'at chambers.' We must suppose that the motion in this case was so heard, and not at the private lodgings of the judge."

These authorities, as well as sec. 471 of the Code, which uses the expression "at their chambers," certainly contemplate a location within some limits less than the entire state, for the chambers of a judge of the tenth judicial district. What was done in this case was done outside of the territorial limits of the tenth judicial district, so that it is not necessary (and under our statutes it might be improper) to restrict such location within limits as narrow as these authorities seem to contemplate. That district has two judges and comprises three counties, in each of which is a court. If a court of a judge of the tenth judicial district is spoken of as "his court," it would certainly mean one of the courts in that district, and not some court outside of that district. Of course a judge, under the laws of this state, may hold court in some other district for another judge; but when he is holding court in another district, he is a part of the court of that district. The judges of the tenth judicial district hold their courts in that district. Their judgments, processes and writs may operate upon persons and things throughout the state, but this does not give them the right to perform judicial acts in connection with their courts in any part of the state. They are elected for that district by the people of that district only. When elected they must be electors and therefore residents of that district. The court-houses in which they hold their courts, the records thereof, the clerks and sheriffs connected therewith must all

be in that district. In fact everything else connected with their courts must be in that district. Nothing exists upon which to base a reason for saying that the chambers of the judges of that district, at which they are enjoined by statute to do such judicial business pertaining to the courts of their district as may be done out of court, may be located anywhere in the state. The statute does not, in terms, empower them to do such business anywhere in the state, but only "at their chambers." Sec. 443 Rev. Code specifies a number of things which the judges may do in vacation "in chambers," and makes it the duty of district judges "each in his own district," to prescribe, by general rule, the time or times and place or places, at which motions and demurrers in actions pending in his district, may be heard in vacation. The very next section, 444, specifies what things the judges may do "in any part of the state," and these are but two, namely, to take and certify, first, "the proof and acknowledgment of a conveyance of real property, or any other instrument required to be proved or acknowledged," second, "an affidavit to be used in any court of justice in this state." It was plainly the intention of the legislature to distinguish in locality between the expression "at chambers" and the expression "in any part of the state."

*Dunn v. Travis*, 26 Pac. 247, was an action involving the act of a Kansas district judge, while in Illinois, in extending the time for the service and settlement of a case made. While this case is not strictly in point here, yet the remarks of the court are applicable to show how an act of the judge, outside of his district, was regarded. The court said:

"The order extending the time is therefore a nullity, as it will not be seriously contended that he could make judicial orders while absent from his district."

*Bedwell v. Ross*, 73 Pac. 267, was an action com-

menced in the district court of Woods county in the sixth judicial district of Oklahoma Territory. The judge who had been assigned to the sixth judicial district, while in the fourth judicial district, granted a temporary injunction in the case. The court, after referring to the case of *Stanley v. United States*, 1 Okla. 336, said:

"This injunction order was issued by Judge Pancoast as a district judge. Now, taking the decision just referred to, and reading it in the light of such changes as have been made by subsequent acts of congress, it clearly shows the fact that the action of the district court in performing a judicial act outside of the limits of the judicial district to which he had been assigned by the supreme court was an unauthorized exercise of authority, and that the subsequent dissolving of such injunction on that ground was in strict accordance with the law of this territory as laid down by the supreme court."

In that case it appears that the organic act of the territory provided that the territory should be divided into judicial districts; that a district court should be held in each county, at such place and time as prescribed by law; that each judge of the supreme court assigned to any district should reside in that district; that the judicial district should be defined and that the times and places at each county seat, in each district where court should be held, should be fixed. These provisions are all similar in principle to the provisions in this state.

Enough has been said to clearly show that the chambers of a district judge, at which he must do such judicial business as may be done out of court, cannot be located without the territorial limits of his district, and that any judicial act pertaining to the courts of his district, done by him outside of his district, is without authority of law, and, therefore, **void**

Outside of his district, he is not a judge of his district, in the sense that he can do judicial business pertaining thereto. From this, it must necessarily follow that the presentation of the affidavits in this case and the action of the judge thereon, outside of the limits of his district, were nullities, and were not a presentation thereof and action thereon by the judge of that district, as contemplated by law. This being so, no jurisdiction was ever acquired of these proceedings, and the motion to quash ought to have been sustained. It is contended by the defendant in error that, inasmuch as the plaintiff in error included in his motion matters consistent with jurisdiction over his person, he thereby waived the issuance of the attachment outside of the tenth judicial district. The error of the defendant in error, in its contention, is to assume that this question goes to jurisdiction over the person of the plaintiff in error. That is not the case. The question goes to the jurisdiction of the court over the particular subject matter of these proceedings. That was not waived nor conferred by consent.

In *Thomas v. The People, supra,* a similar motion was made. The first ground was in the nature of a general demurrer, which always constitutes a general appearance in a court. The second ground was that the information filed was not verified. As far as jurisdiction over the person was concerned, it was as much waived in that case as it is in this; but this court held that the court had not acquired jurisdiction of the case or the subject matter thereof, and that the motion to quash should be sustained. Any other holding in this case would be the granting of a roving commission to the district judges of this state to transact any and all business which may be done out of court in any part of the state. Such a condition would be entirely foreign to the plain intent of the laws of

this state, and would undoubtedly give rise to numerous opportunities for criticism which might often be deserved. It is more important that the courts of this state act within the law and that justice be administered in due form and with becoming solemnity than that this plaintiff in error be punished for this particular alleged contempt.

The judgment of the district court is, therefore, reversed. *Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.