## TERRITORY *v.* FRITZ ECKART.

### Nos. 1949 and 1950.

Submitted April 6, 1931.          Decided April 25, 1931.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PARSONS, J.

The questions herein reserved are thus stated by the trial judge: "1. Is section 25, of title 28, United States Code, applicable to criminal proceedings in the circuit courts of this Territory, wherein a defendant has been indicted, and is about to be tried, in the circuit court, for violations of the National Prohibition Act; that is, sales of intoxicating liquors contrary to law, and (or) the maintaining of a common nuisance contrary to law? 2. If said section 25, of title 28, United States Code, is applicable to such criminal proceedings in the circuit courts of this Territory, has the defendant, in his affidavit filed in each of these two cases, made a sufficient showing of personal bias and prejudice on the part of the presiding judge, such as entitles him to a trial of said cases before another judge? 3. Irrespective of the application of said section 25, title 28, United States Code, has such showing of prejudice and bias been made by the defendant in these two cases by defendant's said affidavit as to disqualify the judge of the circuit court, second circuit, from presiding in the trial of said cases? 4. On motion of counsel for defendant, this question is also reserved: Has the judge of the circuit court, second circuit, disqualified himself from trying said cases by reason of the statements made by him from the bench at this time of reserving questions Nos. 1, 2 and 3?"

The affidavit of defendant referred to in the foregoing certificate of the trial judge is as follows: "Fritz Eckart, of full age, being first duly sworn on his oath, according to law, deposes and says: That he is the defendant in the case of the Territory of Hawaii vs. Fritz Eckart, Criminal No. 1514, now pending in the circuit court of the second judicial circuit, Territory of Hawaii; that he verily believes and charges that the Honorable D. H. Case, judge of the circuit court of the second judicial circuit, Territory

of Hawaii, has a personal bias and prejudice against him, and in favor of the Government of the United States of America and of the Territory of Hawaii, by reason of which the said judge is unable to impartially exercise his functions as judge in this cause, and that by reason of said personal bias and prejudice, affiant can not have a fair and impartial trial before him. The grounds for affiant's belief are as follows: That affiant is informed and believes and alleges the fact to be that said judge, for more than a year last past has interrogated numerous persons in his chambers and elsewhere to elicit information from them concerning alleged liquor transactions on the part of affiant, and has transmitted the information thus obtained to prosecuting and enforcement officers of the United States and the Territory of Hawaii and has declared on numerous occasions that if affiant is convicted in his court he will be severely dealt with; that the activity of said judge in seeking out evidence against affiant is a matter of common knowledge in Wailuku, Maui, and his hostility toward affiant is also well known, and affiant alleges the fact to be that were he tried before said judge the jury would not be able to accord him a fair and impartial trial, but would be influenced against affiant because of the judge's prejudice and bias and subjected to the temptation of yielding to the judge's wishes in the matter, rather than the law and the evidence in the case, thus depriving affiant of the trial he is entitled to under the laws of the United States and the Territory of Hawaii; that, heretofore, to-wit, on the 9th day of January, 1930, in the course of a divorce hearing entitled 'Harriet W. Bergstrom vs. John R. Bergstrom, numbered Divorce 1785,' the said judge used his judicial position to obtain evidence against affiant by interrogating one Harriet W. Bergstrom and one John R. Bergstrom, while on the wit-

ness stand, as to certain alleged liquor transactions of affiant, which transactions had nothing to do with the issue before said court and were not germane or pertinent thereto, but said questions were asked solely for the purpose of procuring evidence against affiant sufficient to procure his indictment or lead to it; that the following were the questions asked by said judge of the said Harriet W. Bergstrom at said time and the following were the answers then given: 'Q. How many times have you been up to Mr. Eckart's with your husband when he got liquor? A. Oh, often. Q. Well, a dozen times, half a dozen times, two or three times, how many times roughly speaking? A. Sometimes about three (3) times a week. Q. Sometimes about three times a week? A. Yes. Q. And have you seen Mr. Eckart hand liquor—bring liquor—out to him? A. Yes. Q. On numerous occasions? A. Yes. Q. And have you seen your husband pay Mr. Eckart for it? A. Yes. Q. You have? A. Yes, I have. Q. And was that the liquor he would take home, and you say he would drink and be drunk? A. Yes. Q. Do you mean Mr. Fritz Eckart up here on Vineyard street? A. Yes.' That the following were the questions asked by said judge of the said John R. Bergstrom at said time and the following were the answers then given: 'Q. Have you paid him (referring to Fritz Eckart) any money for okolehao? A. Oh, yes. Yes, I have. Q. How lately? A. Oh, not since about Christmas time. Q. What? A. Since about Christmas time—December. Q. How many times? A. About twice in December. Q. Your money and money of others too? A. Yes, not all my money. Q. You heard your wife's testimony? A. Yes. Q. Was she correct— that she went up with you to Fritz Eckart's? A. She did. Q. She did? A. Yes, and she drank it with me. Q. And she drank with you? A. Yes. Q. You got liquor and paid for it from Fritz Eckart? A. Yes.' That imme-

924

diately after said hearing, the said judge ordered and directed the official court reporter to transcribe said testimony and the same having been transcribed, he, the said judge, forwarded copies of the same to Walter P. King, federal prohibition administrator, with offices in Honolulu, T. H., and to Prescott A. Foo, prohibition enforcement agent for the island of Maui, to Clement C. Crowell, sheriff of the County of Maui, and to E. R. Bevins, county attorney for the County of Maui; that the action of said judge, affiant further alleges and avers, was construed by said officers as a direction from said court to apprehend affiant, and affiant alleges that his subsequent arrest and indictment was the result of the judge's said action; that said judge has declared on numerous occasions to sundry persons his unfriendly feeling toward affiant and his belief that affiant should be severely dealt with, and his willingness to so deal; and has expressed on numerous occasions his belief in affiant's guilt; all of which is well known to prospective jurors who will ultimately try defendant under the above entitled indictment; that this affidavit is made for the purpose of showing the bias and prejudice of said judge and in support of the motion for the disqualification of said judge."

A similar affidavit was filed in case No. 1515, which is No. 1950 in this court.

The statements of the trial judge, made from the bench at the time of reserving questions 1, 2 and 3, and which are made the basis of question number 4, are thus shown by the transcript: "Bearing upon this application suggesting the disqualification of the judge—the thought comes to me that possibly the court's well known views touching on the observance and enforcement of the National Prohibition Act are being confused with what is termed personal or actual bias. I do favor a strict enforcement of the National Prohibition Act and all acts

amendatory thereto; and in the event of a conviction in any given case, and a new trial not being granted, I favor substantial fines. If the evidence in a given case clearly tends to show a defendant, found guilty of trafficking in liquor, has commercialized violations of the law, I believe he should be punished more severely. I likewise believe that in many such cases a fine does not meet the ends of justice or tend to curb the illicit traffic in liquor. As to these particular cases now before us—on a number of occasions my attention has been called to purported facts, which, if true, would tend to show that Mr. Eckart was engaged in the liquor business contrary to the provisions of the National Prohibition Law. If, in the trial of these cases, the burden of passing upon the facts was a responsibility of mine, and if it was my duty to pass upon the weight and the credibility of the testimony, then, in view of what I have heard, and the impressions these purported facts have made, I would suggest my own disqualification. While I believe that I could proceed in these cases and hear the evidence and pass upon the facts as disclosed during the trial I would decline to do so. However, in each of these cases the jury will pass upon the facts, determine the credibility of the witnesses, and the weight of the evidence, and the court can not, and, of course, will not, comment on the evidence. If the court commits any grievous errors of law during the trial, or shows bias or prejudice during the trial, the defendant has his remedy. I have never made any statement to the effect that Mr. Eckart was a 'notorious bootlegger.' I have never said that if Mr. Eckart was convicted of having violated the National Prohibition Act I would give him the maximum limit allowed by law in the way of a sentence. I have conversed with others on a number of occasions when statements were made to the effect that Mr. Eckart was violating the National Prohibition Act; and I have volunteered the state-

ment, on more than one occasion, that, if such was a fact, it should be brought to the attention of the proper officials and charges preferred; and I still so believe. These interviews were not solicited by me, and I have no reason to believe that those who spoke to me on the matter had any thought of poisoning my mind; it was just casual conversation. I am prejudiced against crime in general, including the crime here charged, but I am unconscious of any personal actual enmity or hostility toward the defendant in these cases. I make these statements in order that, if they tend to show disqualification, defendant may have the benefit of them. However, I prefer not to rule on the question of my own disqualification in these cases. I believe it is but justice to the defendant, and in the interests of the public, that the questions be reserved to the supreme court; and the questions will be reserved to the supreme court under the provisions of section 2513."

The foregoing questions are considered in the order in which they are above stated.

1. Section 25 of title 28 of the United States Code provides as follows: "Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed in section 24 of this title, or chosen in the manner prescribed in section 27 of this title, to hear such matter. Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one such affidavit; and

no such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith. The same proceedings shall be had when the presiding judge shall file with the clerk of the court a certificate that he deems himself unable for any reason to preside with absolute impartiality in the pending suit or action." Title 28 of the United States Code, of which the foregoing section 25 is a part, deals, as its caption sets forth, with the "judicial code and judiciary" and is not a part of the National Prohibition Act which is dealt with under another and different heading, namely, under title 27. Reference to sections 24 and 27, referred to in the above quoted section 25, and title 28 as a whole show that section 25 is applicable only to district courts of the United States. That this is so and that the section does not extend to territorial courts has been judicially determined in this jurisdiction by the circuit court of appeals of the ninth circuit in *Tjosevig* v. *United States,* 255 Fed. 5, 6, opinion by Gilbert, circuit judge.

2. Title 28, section 25, of the United States Code, being inapplicable as above described to proceedings in the circuit courts of this Territory, question number 2 as to the sufficiency or insufficiency of defendant's affidavit thereunder requires no answer.

3. The grounds of disqualification of judges in this Territory are set forth in section 84 of our Organic Act as follows: "That no person shall sit as a judge or juror in any case in which his relative by affinity or by consanguinity within the third degree is interested, either as a plaintiff or defendant, or in the issue of which the said judge or juror has, either directly or through such relative, any pecuniary interest; nor shall any person sit as a judge in any case in which he has been of counsel or on an appeal from any decision or judgment rendered by him,

and the legislature of the Territory may add other causes of disqualification to those herein enumerated."

Legislation on the subject of disqualification of circuit judges is found in section 2509, R. L. 1925, which, however, refers only to the disqualification of a judge upon appeal before a jury from a decision, judgment, order or decree of the same judge at chambers, and is therefore not applicable to the above recited facts in the case at bar. It is equally clear that the foregoing grounds urged for the judge's disqualification are none of them grounds set forth in the above quoted provision of section 24 of the Organic Act. Where Congress by organic act and the legislature by statute have comprehensively dealt with the subject and prescribed the grounds of disqualification of judicial officers, the courts are not justified in adding other grounds not comprehended therein or recognized by the common law. See *State* v. *Beard,* 99 S. E. (W. Va.) 452. "At the common law, as now administered in England and in the United States, bias or favor, not the result of interest or relationship, is not supposed to exist, and in the absence of legislative prohibition, when the judge in a particular case is not called upon to pass on the facts, he is not thereby disqualified to preside at a trial  *  *  *." *State* v. *Beard, supra.* Whether or not any common-law ground not covered by our Organic Act or statutes would disqualify a judge we do not decide—no such common-law ground being presented by the reserved questions.

4. The facts set forth in defendant's affidavit upon which he bases his charge of personal bias and prejudice on the part of the trial judge being thus insufficient in law to disqualify the latter from trying the cases, it follows that the judge's own statement does not disqualify him, for the statement materially qualifies the allegation of the affidavit and expressly disclaims any consciousness

of "personal actual enmity or hostility toward the defendant in these cases."

For the reasons above set forth questions 1, 3 and 4 are answered in the negative and question 2 is returned unanswered.

*E. R. Bevins,* County Attorney of Maui, for the Territory.

*A. E. Jenkins* and *E. J. Botts* for defendant.